

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTA MATTHEWS, | ) | No. 05 C 2748 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | The Honorable William J. Hibbler |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN E. POTTER, Postmaster General | ) | |
| of the United States, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Roberta Matthews, a former employee of the United States Postal Service, sued John E. Potter the Postmaster General of the United States and ten individual postal employees.[1] Matthews's Complaint alleges she was discriminated against because she is an African-American woman.[2] The Postal Service asserts Matthews is barred from bringing this action because she failed to disclose these claims during her two prior bankruptcy proceedings. For the reasons set forth below, the Postal Service's motion for judgment on the pleadings is converted to a motion for summary judgment and GRANTED.

### I. Factual Background

---

[1] In a Title VII case alleging discrimination against the Postal Service "the *only* proper defendant is the head of the agency – the Postmaster General." *Ellis v. United States Postal Service*, 784 F.2d 835, 838 (7th Cir. 1986) (emphasis added). Accordingly, the Court granted Matthews's motion to dismiss the individual defendants on July 26, 2006

[2] Specifically, Matthews's complaint alleges gender and racial discrimination in violation of Title VII of the Civil Rights Act of 1964, the denial of equal protection in violation of 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991, and unlawful retaliation stemming from Matthews's EEOC activities.

1

The United States Postal Service employed Roberta Matthews as a letter carrier in Oakbrook, Illinois. (1st Am. Compl. ¶ 23.) Matthews alleges the Postal Service discriminated against her throughout her career. (1st Am. Compl. ¶ 2.) According to Matthews, the discrimination manifested itself in a number of ways including: transferring her to a less desirable location, failing to promptly provide her with continuation pay, refusing to accommodate her doctor imposed work restrictions, assigning her tasks that required her to deviate from her designated route, and ultimately termination. (*Id.*)

Starting in 2000, Matthews began registering complaints with the Equal Employment Opportunity Commission. Matthews filed complaints on December 23, 2000; May 13, 2002; May 16, 2003; and January 27, 2004. (1st Am. Compl. ¶ 22.) Around this same time, Matthews's personal debt began to spiral out of control. In order to stave off her numerous creditors, Matthews filed for Chapter 13 Bankruptcy on March 21, 2002. (Def's Mot. for Judgment on the Pleadings, Ex. A). The purpose of Chapter 13 Bankruptcy is to allow an individual, under court supervision, to formulate and execute a plan of debt repayment over time. *See e.g., In re Smith*, 848 F.2d 813, 817 (7th Cir. 1988). But, Chapter 13 is only useful when the debtor sticks to the agreed upon plan. Here, there was no such conformity. On April 9, 2003, the Bankruptcy Court for the Northern District of Illinois found Matthews to be in default because she failed to make the payments required under the terms of the plan.[3] (Def's Mot. for Judgment on the Pleadings, Ex. A).

---

[3] Matthews argues she defaulted because the Postal Service refused to pay her for the seven days she spent recovering from an on the job injury suffered on September 18, 2000. (1st Am. Compl. ¶¶ 38-42, 64.) The Postal Service eventually awarded Matthews the disputed back pay, albeit approximately four months later.

2

Matthews was unable to stabilize her finances after the default and on July 16, 2004, she filed another bankruptcy petition, this time seeking refuge under Chapter 7 of the Bankruptcy Code. (Def's Mot. for Judgment on the Pleadings, Ex. C). Unlike Chapter 13, Chapter 7 liquidates rather than reorganizes debts. By the time Matthews filed her second bankruptcy petition she had amassed more than $40,000 in debt. (*Id.*) On November 1, 2004, the Bankruptcy Court granted Matthews a full discharge of her debts pursuant to Title 11, Section 727 of the Bankruptcy Code. (*Id.*)

On May 9, 2005, Matthews sued the Postal Service. On September 5, 2007, the Postal Service moved for judgment on the pleadings.[4]

## II.     Standard of Review

Federal Rule of Civil Procedure 12(C) allows a party to move for judgment on the pleadings "after the pleadings are closed but within such a time as not to delay the trial." Fed. R. Civ. P. 12(C). The documents that can be considered in conjunction with a 12(C) motion are restricted to the "complaint, the answer, and any written instruments attached as exhibits." *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Here, the litigants have relied on documents outside the purview of Rule 12(C). Specifically, the parties submitted documents related to Matthews's two prior bankruptcy filings. Because the bankruptcy documents were not attached as exhibits to the pleadings, the Court will use its discretion and convert the motion for judgment on the pleadings to a motion for summary judgment. *Church v. General Motors Corp.*, 74 F.3d 795, 798 (7th Cir. 1996) (motion for judgment on the pleadings properly converted to motion for summary judgment where the court considered deposition testimony and

---

[4] Although Matthews had the assistance of counsel while preparing her amended complaint, she responded to the motion for judgment on the pleadings on a *pro se* basis.

3

contracts not attached to the pleadings); *see generally* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1371 (3d ed. 2004) ("it is well settled that it is within the district court's discretion whether to accept extra-pleading matter on a motion for judgment on the pleadings and treat it as one for summary judgment ..."). Thus, the instant motion will be reviewed under Federal Rule of Civil Procedure 56.

According to Rule 56, summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met their initial burden of demonstrating that there are no issues of material fact, the nonmoving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The nonmoving party must produce specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the nonmoving party. *Id.* at 255.

### III. Analysis

Matthews filed for bankruptcy on two separate occasions, first on March 21, 2002 and then on July 16, 2004. During that same time period, Matthews filed four administrative complaints alleging discrimination, but failed to list these claims on either of her bankruptcy petitions. On November 1, 2004, Matthews received a full discharge

4

of her debts. The Postal Service argues Matthews is judicially estopped from pursuing the discrimination claims because she failed to list them on her bankruptcy petitions. Matthews counters she cured the defect when she amended her petition to include the claims. The Court disagrees.

The Postal Service rightly points out that the starting point for the Court's analysis should be the Seventh Circuit's opinion in *Cannon-Stokes v. Potter*, 453 F.3d 446 (7th Cir. 2006). In *Cannon-Stokes*, the plaintiff filed an administrative claim against the Postal Service for violation of the Rehabilitation Act, 29 U.S.C. § 791. *Id.* at 447. At the same time, the plaintiff filed a Chapter 7 bankruptcy petition that sated she had no unliquidated legal claims. *Id.* The bankruptcy court accepted the plaintiff's representations and granted her a full discharge of her debts. *Id.* at 447. Free from having to share any proceeds with her creditors, the plaintiff then sued the Postal Service in the Northern District of Illinois under the Rehabilitation Act. *Id.* The Seventh Circuit however, held that the plaintiff was precluded from pursuing the claim. *Id.* at 449.

The court reasoned that judicial estoppel barred the plaintiff from receiving financial compensation for claims that according to her bankruptcy petition did not exist. Moreover, the Court was reticent to incentivize procedural chicanery. If the court allowed plaintiffs to recover on concealed claims, then duplicitous debtors would be emboldened to omit lawsuits from their bankruptcy petitions. *Id.* at 448. After obtaining discharges from their obligations, debtors would be free to keep every penny of the recovery proceeds for themselves. The court noted that this is precisely the type of incentive judicial estoppel is designed to prevent. *Id.*

5

Matthews's situation is similar but not identical to *Cannon-Stokes*. To be sure, Matthews omitted her discrimination claims from her bankruptcy petitions. Unlike the plaintiff in *Cannon-Stokes* however, Matthews later amended her petition to reflect this pending action. Because the Seventh Circuit has not considered this particular fact pattern, the Court will look to its sister circuits for guidance.

A.  *The Eleventh Circuit*

In *Barger v. Cartersville*, the court analyzed whether a plaintiff that had received a discharge of her debts under Chapter 7 should be estopped from bringing a discrimination claim that was omitted from her bankruptcy petition. 348 F.3d 1289, 1297 (11th Cir. 2003). Barger argued that because she subsequently amended her bankruptcy petition to include the absent claims, judicial estoppel should not apply. The Fifth Circuit found Barger's argument to be lacking:

> Barger's attempt to reopen the bankruptcy estate to include her discrimination claim hardly casts her in the good light she would like. She only sought to reopen the bankruptcy estate after the defendants moved the district court to enter summary judgment against her on judicial estoppel grounds.
>
> Allowing a debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets. As such, Barger's disclosure upon re-opening the bankruptcy estate deserves no favor.

*Barger*, 348 F.3d at 1297, (quoting *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)).

Accordingly, the court held that Barger was estopped from pursuing her claim.

A comparable situation arose in *De Leon v. Comcar Indus.*, 321 F.3d 1289, (11th Cir. 2003). In *De Leon*, the plaintiff filed for protection under Chapter 13 but failed to

list the discrimination claim on his bankruptcy petition. *Id.* at 1290. Nine months later, the plaintiff amended his bankruptcy petition and added the claim. *Id.* Nevertheless, the court held that judicial estoppel precluded the plaintiff from bringing his case: "despite [the plaintiff's] continuing duty to disclose all assets or potential assets to the bankruptcy court, he did not amend his bankruptcy documents to add a potential employment discrimination claim until after [the defendant] relied on it in its motion to dismiss the case." *Id.* at 1292. Because the plaintiff knew about his potential lawsuit when he filed out his bankruptcy petition, the court concluded that he had motive for concealment (shielding any future proceeds from creditors) and was thus making a "mockery of the judicial system." *Id.*

B.  *The Tenth Circuit*

Similar logic was used by the Tenth Circuit in *Eastman v. Union Pac. R. R.*, 493 F.3d 1151 (10th Cir. 2007). The plaintiff in *Eastman* was injured on the job and sued his employer. *Id.* Approximately eight months later, the plaintiff filed for Chapter 7 bankruptcy but failed to list the lawsuit on his petition. *Id.* After obtaining a full discharge of his debts, the plaintiff amended his bankruptcy schedule to include the lawsuit. *Id.* When the plaintiff sought to recover on the personal injury suit, the court held that the plaintiff was judicially estopped from asserting his claim. First, the Court noted that:

> [The plaintiff] had a motive to sweep his personal injury action under the rug so he could obtain a discharge free and clear of his creditors. The ever present motive to conceal legal claims and reap the financial rewards undoubtedly is why so many of the cases applying judicial estoppel involve debtors-turned plaintiffs who have failed to disclose such claims in bankruptcy. The doctrine of judicial estoppel serves to offset such motive, inducing debtors to be completely truthful in their bankruptcy disclosures ...

7

> A debtor once he files for bankruptcy, disrupts the flow of commerce and promptly benefits from an automatic stay. The debtor then receives the ultimate benefit of bankruptcy when he receives a discharge. A chapter 7 discharge, like [plaintiff] received from the bankruptcy court relieves the debtor of any obligation to pay outstanding debts. This in the aggregate drives up interest rates and harms creditworthy borrows. In exchange for these benefits, the bankruptcy code only required that [plaintiff] fully and accurately disclose his financial status.

*Eastman*, 493 F.3d at 1159 (internal citations omitted)

The Court acknowledged that the plaintiff amended his petition to reflect the lawsuit, but this was not enough to prevent the application of judicial estoppel: "That [plaintiff's] bankruptcy was reopened and his creditors were made whole once his omission became known is inconsequential." *Id.* at 1160.

C. *The Third Circuit*

In *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, a debtor that omitted potential claims from its bankruptcy petition argued that judicial estoppel should not apply because it amended its petition to include the claims. 337 F.3d 314, 321 (3rd Cir. 2003). The court was unimpressed by the debtor's "eleventh hour candor" and affirmed the district court's application of judicial estoppel:

> The bankruptcy rules were clearly not intended to encourage this kind of inadequate and misleading disclosure by creating an escape hatch debtors can duck into to avoid sanctions for omitting claims once their lack of candor is discovered.

*Krystal Cadillac*, 337 F.3d at 321.

The court also emphasized the sound policy reasons behind the doctrine of judicial estoppel: "nondisclosures affect creditors' willingness to negotiate their claims and enhance the debtor's bargaining position by making the pot that creditors look to for recovery appear smaller than it really is." *Id.* at 325.

D. *Application to Matthews*

8

At first blush, Matthews's decision to amend her bankruptcy petition seems to alleviate the concerns expressed in *Cannon-Stokes*. But, Matthews waited *more than two years* before she moved to reopen her bankruptcy case and only did so *after* the Postal Service asserted the defense of judicial estoppel. As discussed *supra*, this exact argument was considered and rejected by multiple circuits. The Court finds the logic in *Krystal Cadillac, Barger, Eastman* and *DeLeon* to be both persuasive and illustrative of current judicial authority.

By the time Matthews amended her petition she had already received a discharge of her all debts. In exchange for this relief, Matthews only had to list all her unliquidated legal claims. She failed to do so. Matthews contends she omitted the claims because she misunderstood the wording on the bankruptcy petition. The Court acknowledges that deciphering the oft-arcane language of bankruptcy law can be difficult. But, Matthews was not alone - she was represented by counsel during both of her bankruptcy proceedings.[5] Moreover, Matthews disclosed a workers' compensation claim on her Chapter 13 petition but failed to disclose any of her discrimination claims. A debtor can not pick and choose which claims to disclose and which to stash away for a rainy day.

It is possible that Matthews received bad advice from her lawyers regarding whether to disclose the claims. Yet, "bad legal advice does not relieve the client of the consequences of her own acts. A lawyer is the client's agent, and the client is bound by the consequences of advice that the client chooses to follow..." *Cannon-Stokes*, 453 F.3d

---

[5] In *Becker v. Verizon North Inc.*, the Seventh Circuit suggested that even a good-faith mistake is inexcusable: "Becker intimates that her failure to disclose this lawsuit in her sworn financial statement was unintentional, *but her subjective intent does not matter* ... Becker's failure to disclose her claims during the bankruptcy proceeding judicially estops her from pursuing them now." No. 06-C2956, 2007 U.S. App. LEXIS 9879, at *4 (7th Cir. April 25, 2007) (emphasis added).

9

at 449. If an attorney directed Matthews to omit the claims from her petition then the appropriate response "lies in malpractice litigation against the offending lawyer." *Id.*

## IV. CONCLUSION

Matthews did not list her unliquidated legal claims on her bankruptcy petitions. Thus, when the Bankruptcy Court relieved Matthews of her obligation to pay her creditors, it did so with an incomplete picture of Matthews's financial standing. Despite this windfall, there is no argument that Matthews should lose the benefit of having her debts discharged. Rather, the Postal Service contends, and the Court holds, that a debtor that denies owning a legal claim cannot capitalize on that claim after the bankruptcy ends. Accordingly, the Postal Service's motion for judgment on the pleadings is converted to a motion for summary judgment and GRANTED.

IT IS SO ORDERED.

3/24/08
Dated

The Honorable William J. Hibbler
United States District Court