IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERTA MATTHEWS, )
)
Plaintiff, )
) No. 05 C 2748
v. )
) Honorable William J. Hibbler
PATRICK R. DONAHOE, )
Postmaster General, )
United States Postal Service, )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Roberta Matthews alleged that her former employer, the U.S. Postal Service, discriminated against her on the basis of her race and sex. The Postal Service has moved for summary judgment on Matthews' claims. For the reasons set forth below, the Court GRANTS the Defendant's Motion.

**I.  Local Rule 56.1**

The Court first addresses Matthew's failure to comply with Local Rule 56.1(b)(3)(B). Under Local Rule 56.1, a party moving for summary judgment must file a list of undisputed facts that entitle it to judgment as a matter of law. The non-moving party must then respond to those assertions by either admitting or disputing each fact. L.R. 56.1(b)(3)(B). For each fact it disputes, the nonmoving party must cite the specific portions of the record that support that dispute. *Id.* Because it helps courts organize evidence and identify disputed facts, Rule 56.1 plays an important role in summary judgment proceedings. *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009).

In this case, Matthews has failed to comply with Rule 56.1. For the factual assertions she disputes (8, 15, 16, 23, 29, 38, 43, 45, 54, 64, 69, 72, and 76), Matthews provides no citation to

1

the record and leaves the Court without any information from which it might evaluate her dispute. It is not enough for a non-moving party to simply contend that a factual assertion is disputed, it must provide the Court with the record citations necessary to make that determination. Because Matthews has failed to comply with Local Rule 56.1(b)(3)(C), the Court deems Matthews to have admitted all of the factual statements noted above for purposes of the Motion for Summary Judgment. *Cracco*, 559 F.3d at 632.

## II. Statement of Facts

Matthews, an African-American female, began her career appointment with the Postal Service in May 1994 as a city carrier. (Def. Rule 56.1(a)(3) Statement (hereinafter "Def. St.") ¶ 2.) At all relevant times, Matthews was involved with the National Alliance of Postal and Federal Employees Union, and she represented fellow workers who complained of discrimination in equal employment opportunity proceedings. (Pl. St. ¶ 1.)

### A. Delay of Continuation of Payment Following Injury

On September 18, 2000, Matthews reportedly suffered a workplace injury to her lower back. (Def. St. ¶ 11.) Under Postal Service guidelines, when an employee suffers an on-the-job injury that temporarily prevents her from performing some or all of her duties, she may submit what is called a Notice of Traumatic Injury, requesting continuation of pay ("COP") during her recuperation. (Def. St. ¶ 12.) An employee can receive continuation of pay for up to 45 calendar days from the date of injury. (Def. St. ¶ 14.)

Just a few days after her reported workplace injury, on September 25, 2000, Matthews was in a car accident. (Docket No. 111-8 at 33.) The same day of the car accident, she filed a request for continuation of pay based on the September 18, 2000 workplace injury. (*Id.*) The Postal Service contested her claim for continuation of pay on the grounds that her injuries stemmed from the car accident, rather than the purported workplace accident. (*Id.*) Her claim

2

was then forwarded to the Office of Workers' Compensation Programs (OWCP), which had the exclusive authority to determine her eligibility. (Docket No. 111-8 at 16.) On November 1, 2000, OWCP acknowledged receipt of Matthews' claim and directed the Postal Service to continue Matthews' pay despite the fact that Matthews had provided insufficient documentation of her injury. (Docket No. 111-8 at 23.) Matthews' continuation of pay was satisfied in early January when she received a lump sum payment for the time she took off due to her injury. (Def. St. ¶ 18.)

The parties dispute the reason for the Postal Service's delay, from late September to early January, in satisfying Matthews' continuation of payment request. The Postal Service claims that Matthews' Notice failed to demonstrate that her injury occurred while she was on duty, whereas Matthews claims that there was a discriminatory motive for the delay.

### B. Transfer to Willowbrook

Beginning in 1997, Matthews was assigned to the Oakbrook facility as a carrier. (Def. St. ¶ 2.) Matthews worked a "regular route," which meant that she serviced the same geographic area every day. (Def. St. ¶ 4.) Her route was also a "combination route," meaning it involved both deliveries and collections. (Def. St. ¶ 4.)

In June 2001, all combination routes were abolished or reorganized. (Def. St. ¶ 5.) As a result, a number of new routes were opened for bidding. Matthews bid on and was awarded a position as a "reserve carrier," which guaranteed her a start time of 10:00 a.m. and an end time of 6:30 p.m. (Def. St. ¶ 7.) As a reserve carrier, Matthews no longer had a regular route. Instead, she was assigned different routes or duties each day, according to Postal Service needs. (Def. St. ¶ 7.) Routes with start times of 10:00 a.m. generally originated from the Oakbrook facility, and Matthews therefore reported to that facility each day. In March 2002, however, she learned she was expected to start reporting to the Willowbrook annex. (Def. St. ¶ 26.) Matthews had never

3

worked out of the Willowbrook annex before and apparently preferred not to report there. Matthews alleges that that transfer was discriminatory based on her race and sex.

### C.     Stewart Dispute

On May 6, 2003, Matthews called a supervisor from her route to request assistance in completing her deliveries. (Def. St. ¶ 49.) The supervisor sent another postal employee, Laura Stewart, to assist Matthews. (*Id.*) Matthews contends that Stewart argued with her and unnecessarily questioned her. (Def. St. ¶ 50.) When Matthews returned to the Willowbrook annex, Matthews approached Supervisor Ed Lackland to complain about Stewart. (Def. St. ¶ 51.) According to Lackland, Matthews yelled: "You better tell these mother fucking PTFs [part time flexibles] not to question me when they come out to help because they don't know who they are fucking with." (*Id.*) Lackland also observed Matthews look directly at Stewart and say: "That bitch better know who she's fucking with" and "she does not want to see the ghetto bitch come out and if she comes out there again, I'm going to kick her ass." (Def. St. ¶ 52.) After the incident with Stewart, Matthews was suspended. (Pl. St. ¶ 8; Def. St. ¶ 54.) Ms. Stewart was not disciplined. (Pl. St. ¶ 3.) Plaintiff was allowed to return back to work on December 1, 2003. (Pl. Resp. at 7.)

### D.     Miscellaneous Incidents of Harassment

Matthews claims she was "constantly harassed and subjected to a hostile work environment" at the Willowbrook annex. Throughout her summary judgment pleadings, Matthews vaguely references many instances of perceived mistreatment. The problem, however, is that she fails to include sufficient detail or record citation for the Court to understand what happened. For example, Matthews argues in her Response to Defendant's Motion for Summary Judgment that she was "instructed to deliver mail in total darkness, harassed in the street by management, was the only late starter ordered to take her lunch at specific times, given paper

4

training, and ordered to stay past her end tour although she was not on the overtime list." (Pl. Resp. at 7.) Matthews includes no additional information about any of those events, and provides no citation to the record from which the Court might gather, for example, the meaning of "paper training."

The best the Court can understand is that (1) Matthews' manager Chuck Bunuska followed her on her route and instructed her to take shortcuts across grass and "finger" mail while she was walking (Pl. Resp. at 5.); (2) Matthews was issued a warning on April 15, 2002 for failure to maintain a regular schedule citing eleven unexplained absences (Def. St. ¶ 32.); and (3) Manager Charles Benuska kept a "separate file" on Matthews and said her union involvement was "big issue." (Pl. St. ¶ 7.)

### E. Termination

During the months of December, January, and February 2003, Matthews was persistently absent from work. She reported to work only about eleven days in December, stopped coming to work altogether sometime in January, and failed to attend at all in February. (Def. St. ¶ 74.) Those absences were undocumented and unauthorized. (*Id.*)

The Postal Service issued Matthews a notice of removal in March 2004. (Def. St. ¶ 73.)

### III. Standard of Review

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659,

5

667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

## IV. Analysis

Matthews claims she was discriminated against on the basis of her race and sex. She may prove her claims by one of two methods, commonly known as the direct and indirect methods. *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 728 (7th Cir. 2004). Matthews chooses to proceed under the indirect, burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). A plaintiff pursuing the indirect method must first set forth a *prima facie* case of discrimination by demonstrating that (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) the employer treated similarly-situated employees outside the protected class more favorably. *Lucas*, 367 F.3d at 728. If Matthews can satisfy those elements, the burden shifts to the Postal Service to articulate a legitimate non-discriminatory reason for taking the adverse action. *Id.* Then, the burden shifts back to Matthews to demonstrate that the reason offered is pretext for discrimination. *Id.*

In this case, Matthews points to five Postal Service actions she says were discriminatory: (1) the delay of COP payments, (2) her transfer to Willowbrook, (3) miscellaneous incidents of harassment at the Willowbrook annex, (4) discipline following the Stewart altercation; and (5) her ultimate termination. As described below, Matthews has failed to set forth a *prima facie* case for each of the alleged actions.

6

### A. No adverse employment action

The first problem with Matthews' discrimination claims is that three of the five incidents she points to as discriminatory do not constitute adverse employment actions. To demonstrate an adverse employment action, "an employee must be able to show a quantitative or qualitative change in the terms or conditions of employment." *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 532 (7th Cir. 2003). "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir. 2001).

The delay in Matthews' continuation of pay was not an adverse employment action: the record demonstrates that it was the result of an administrative delay, for which Matthews was partly responsible. Moreover, it had no effect on the terms of her employment. While the delay in payment from late September to early January may have been a significant inconvenience for Matthews, that alone does not make it an actionable adverse employment action. *Herron v. Daimler Chrysler Corp.*, 388 F.3d 293 (7th Cir. 2004) (short delay in overtime payment is an inconvenience, not an adverse employment action).

Similarly, Matthews' transfer from the Oakbrook post office to the Willowbrook annex was not an adverse employment action. It is uncontested that Matthews bid on, and was granted, a reserve carrier position, which meant that she would be assigned to varying routes according to Postal Service needs. Also, Matthews stated that her duties were unchanged from one facility to another. (Docket No. 111-9 at 7 "My assigned tasks at Willowbrook were the same as my assigned tasks in Oakbrook.") Thus, the transfer cannot, as a matter of law, support a claim for discrimination under Title VII. *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (no adverse employment action where change in shift was not accompanied by a reduction in pay or significantly diminished job responsibilities); *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727

(7th Cir.2004) ("job transfers ... that lead to *significantly diminished responsibilities and substantially changed working conditions* can be retaliatory actions") (emphasis added).

It is unclear from Matthews' Response brief if she also maintains that her transfer to Willowbrook was retaliation for her union involvement. If so, that claim also fails because reprisal discrimination also requires an adverse employment action and, as described above, the transfer cannot constitute an adverse employment action as a matter of law. *Hill v. Potter*, 625 F.3d 998, 1000-1001 (7th Cir. 2010).

Finally, Matthews cannot establish that the assorted "harassment" she suffered at the Wollowbrook annex might fall into the "hostile work environment" category of adverse actions. Under Title VII, in order for a claimant to establish *prima facie* case of a hostile work environment, the alleged harassment must be so severe or pervasive as to alter conditions of employment and create an abusive working environment. *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1034 (7th Cir. 2004) (no *prima facie* case of discrimination where plaintiff was yelled at, upset by her co-workers, and felt threatened on three occasions).

Here, the record indicates that (1) Matthews' manager Chuck Bunuska followed her on her route and instructed her to take shortcuts across grass and "finger" mail while she was walking (Pl. Mot. at 5); (2) Matthews was issued a warning on April 15, 2002 for failure to maintain a regular schedule citing eleven unexplained absences (Def. St. ¶ 32); and (3) manager Charles Benuska kept a "separate file" on Matthews and said her union involvement was "big issue" (Pl. St. ¶ 7). Even drawing all reasonable inferences in Matthews' favor, those instances were not severe or pervasive enough to support a hostile work environment claim.

Matthews has also failed to establish that the supposedly inappropriate conduct of her Willowbrook supervisors and managers was motivated by Matthews' race or sex. Although a

plaintiff need not identify an explicitly racial dimension of the challenged conduct to sustain a Title VII claim, she must be able to attribute a racial "character or purpose" to it. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999). Matthews has not put forth any facts to establish that any of the instances above were motivated by, or had anything to do with, her race or sex.

Given those facts, the Court finds that there are no genuine disputes as to whether Matthews' first three alleged incidents of discrimination—(1) the delay of COP payments, (2) her transfer to Willowbrook, (3) miscellaneous incidents of harassment at the Willowbrook annex—constitute adverse employment actions. Those incidents cannot, therefore, form the basis of Matthews' Title VII action.

### B. Failure to Demonstrate Satisfactory Job Performance

The remaining two incidents of alleged discrimination—the discipline following the Stewart altercation, and the ultimate termination—fail for a different reason: Matthews cannot demonstrate that she was performing her job satisfactorily.

First, regarding the Stewart incident, Matthews admits that she was observed yelling profanity at supervisors and coworkers following her altercation with Stewart. She offers no evidence in dispute of that account of events. Mounting a verbal assault on a fellow coworker is not satisfactory job performance. The fact that the coworker may have provoked that conduct is irrelevant. *Palmer v. Circuit Court of Cook County*, 117 F.3d 351, 352 (7th Cir. 1997) (affirming grant of summary judgment where plaintiff threatened co-worker).

Second, regarding her termination, Matthews admits that the Postal Service's decision to remove her came after she had missed 53 days of work. (Def. St. 74.) Those absences were undocumented and unauthorized. The Postal Service noted Matthews as absent for much of December 2003 and January 2004 and for all of February 2004. The Postal Service finally

9

issued a notice of removal to Matthews in March 2004. By any objective standard, consistently failing to report to work without explanation is unacceptable conduct. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1128 (7th Cir. 2006) (affirming grant of summary judgment where plaintiff was persistently absent from work).

The only evidence Matthews points to in support for her contention that she was meeting the reasonable expectations of her employer is a single quote from her coworker Larry Theisinger. (Pl. St. ¶ 12.) Theisinger stated that Matthews seemed to be meeting the expectations of their employer. (Docket No. 116-2 at 36-37). That reference is inadequate to create a factual dispute as to Matthews' deficient job performance because Theisinger also stated that it was not his job to supervise Matthews (*id.* at 27-28), he did not have a comprehensive understanding of what the Postal Service's expectations were (*id.* at 36), he had limited opportunities to observe Matthews' job performance at the annex (*id.* at 31), and he observed her only on "the floor" not on her routes (*id.* at 35).

Given those facts, the Court finds that there are no genuine disputes as to whether Matthews was performing her job satisfactorily in connection with the discipline following the Stewart altercation and the ultimate termination. Thus, those incidents cannot form a basis of Matthews' Title VII action.

## CONCLUSION

For the above reasons, the Court GRANTS Defendant's motion for summary judgment.

IT IS SO ORDERED.

_12/13/11_
Dated

Hon. William J. Hibbler
United States District Court